## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02802-NYW
*Consolidated with Civil Action No. 19-cv-03117-NYW*

KELLY K. STAGGS,

    Plaintiff,

v.

THE CITY OF ARVADA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendant the City of Arvada's ("Defendant" or the "City") Motion for Summary Judgment (or "Motion"), filed October 9, 2020. [#41]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes, [#16], and concludes oral argument will not materially assist in the resolution of this matter. Accordingly, upon review of the Motion and related briefing, applicable case law, and the record before the court, I respectfully **GRANT** the Motion for Summary Judgment.

## BACKGROUND

    Plaintiff Kelly Staggs ("Plaintiff" or "Ms. Staggs"), a former employee of the City, initiated this civil action by filing her pro se Complaint on September 30, 2019, asserting a host of employment discrimination claims under federal law. *See generally* [#1]. On November 1, 2019, Ms. Staggs filed a similar civil action in this District, *Staggs v. City of Arvada et al.*, Civil Action No. 19-cv-03117-NYW, which the undersigned consolidated with this civil action on January 14, 2020. [#21]. Given the consolidation, Ms. Staggs filed a combined Amended Complaint. [#20].

Pursuant to the court's interpretation, Ms. Staggs's Amended Complaint asserted the following claims against Defendant and various individuals (the "Individual Defendants"): religious discrimination under Title VII of the Civil Rights Act ("Title VII"); retaliation under the False Claims Act ("FCA"); disability discrimination under Title II of the Americans with Disabilities Act ("ADA"); sex discrimination under Title VII; age discrimination under the Age Discrimination in Employment Act ("ADEA"); disability discrimination under Title I of the ADA; and interference with leave under the Family and Medical Leave Act ("FMLA"). *See generally* [*id.*].

On February 4, 2020, the City and the Individual Defendants filed their Motion to Dismiss, arguing Ms. Staggs failed to plead any plausible claims for relief and thus the court should dismiss her Amended Complaint in its entirety. [#30]. The court granted in part and denied in part the Motion to Dismiss, concluding that Ms. Staggs pleaded plausible claims under the FMLA against the City for interference and retaliation but failed to plead any plausible claims against the Individual Defendants or the City under her other theories of discrimination. *See* [#36].

Ms. Staggs and the City proceeded through discovery on Ms. Staggs's remaining FMLA claims, and the City filed the instant Motion for Summary Judgment on October 9, 2020. [#41]. Ms. Staggs has since responded to the Motion and the City replied. *See* [#48; #56]. Because the Motion is ripe for disposition, I consider the Parties' arguments below.

## LEGAL STANDARDS

Pursuant to Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189,

2

1194 (10th Cir. 2011) (internal citations and quotation marks omitted).  It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  At all times, the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."  *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

To satisfy her burden at summary judgment the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment).  In considering the nonmovant's evidence, the court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  Further, the court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial, only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).  Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

In applying these legal principles, this court is mindful that Ms. Staggs proceeds pro se and is entitled to a liberal construction of her papers.  *Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th

Cir. 2019). But the court cannot and does not act as an advocate for a pro se party. *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019). Nor does a party's pro se status exempt her from complying with the procedural rules that govern all civil actions filed in this District, namely, the Federal Rules of Civil Procedure and the Local Rules of Practice for the District of Colorado. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

## UNDISPUTED MATERIAL FACTS

The court draws the following material facts from the record properly before the court on the instant Motion for Summary Judgment. These material facts are undisputed.[1]

1.  Ms. Staggs was an employee of the City for approximately 11 years and last worked as an Accounts Payable Technician. *See* [#41-1 at 32:3-14, 33:4-34:6, 34:11-16, 35:3-14, 36:24-37:7, 44:21-45:1, 45:17-20].[2]

---

[1] Ms. Staggs appears to dispute numerous material facts. *See generally* [#48]. But several of her disputes are immaterial to the court's consideration of the instant Motion or are not supported by specific facts or admissible evidence to demonstrate a disputed material fact. Fed. R. Civ. P. 56(e) ("If a party fails … to properly address another party's assertion of fact as required by Rule 56(c), the court may: … consider the fact undisputed for the purposes of the motion."). Although Ms. Staggs proceeds pro se, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record" for purposes of summary judgment. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Further, conclusory statements or those based on speculation, conjecture, or surmise provide no probative value on summary judgment, *see Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990), and Mr. Staggs may not rely on "mere reargument of her case or a denial of an opponent's allegation," *see* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998). Finally, Ms. Staggs cannot create genuine disputes of material fact based on her own contradictory sworn statements that are inconsistent with other sworn testimony. *See Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 956 n.3 (10th Cir. 2012) (noting that an affidavit on summary judgment cannot create a genuine issue of material fact when, without explanation, it contradicts prior testimony).

[2] When citing to a transcript, the court cites to the document number generated by the Electronic Court Filing system, but the page and line numbers generated by the transcript.

4

2.      Beginning in or around 2013 and 2014, Ms. Staggs sought and received intermittent FMLA leave for her migraines, and she recertified this FMLA leave each year with the City. *See* [#41-1 at 45:21-46:12, 47:14-48:2, 48:19-25, 49:6-11, 49:17-21].

3.      On or about December 8, 2017, Ms. Staggs had a somewhat contentious conversation with the Director of Finance Brian Archer ("Mr. Archer") about the display of holiday decorations in the office and Ms. Staggs's concern that holiday decorations were inappropriate and not inclusive. *See, e.g.*, [#41-6 at 138:21-142:2, 264:3-266:5, 268:25-269:8; 270:9-25, 271:2-20, 272:14-20; #41-11 at 5, 10-11; #41-13 at 2, 4, 12].

4.      Ms. Staggs felt like Mr. Archer (and other colleagues) were discriminating against and/or treating her differently given her objections to the holiday decorations, which led to several altercations between Ms. Staggs and her colleagues and supervisors. *See, e.g.*, [#41-2 at 152:6-153:21; #41-6 at 271:11-20, 278:17-279:23, 283:16-24, 293:1-10, 293:15-300:14, 301:2-25, 302:5-305:16; #41-8; #41-10; #41-11; #41-12; #41-13; #41-14].

5.      The City cited these altercations in its oral and written reprimands and in its decision to place Ms. Staggs on administrative leave. *See* [#41-1 at 90:4-20; #41-2 at 136:8-138:5, 143:12-147:3; #41-5 at 5; #41-6 at 45:9-46:24, 52:8-54:20, 62:12-65:18, 149:16-150:25, 151:11-153:11, 298:13-299:13; #41-10; #41-11; #41-12; #41-13; #41-14].

6.      In or about December 2017, Ms. Staggs renewed her application for intermittent FMLA leave based this time on both migraines and panic attacks, which Mr. Archer approved. *See* [#41-1 at 49:22-50:11, 54:1-56:8, 56:9-57:8].

7.      Ms. Staggs utilized her intermittent FLMA leave on December 18-22, 2017; December 26, 2017; December 29, 2017; January 3, 2018; January 5, 2018; January 12, 2018; and

January 22-24, 2018, at the behest of her supervisors. *See* [#41-1 at 70:22-71:2, 71:3-72:6, 77:21-78:3, 83:23-84:24, 85:1-86:17, 87:7-88:6, 92:1-23; #41-5 at 3-4].

    8. During those time, Ms. Staggs received the following communications from the City:

    a. December 19, 2017, Ms. Staggs received a short telephone call from her supervisor Danielle Trujillo regarding log-in information for a webinar, the finding of Ms. Staggs's daughter's credit card, and Ms. Staggs's FMLA paperwork. *See* [#41-1 at 105:1-106:7, 108:6-109:3];

    b. January 3, 2018, Ms. Staggs received a short telephone call from Controller Debra Nielson ("Ms. Nielson") about an email from the Human Resource Director Linda Haley regarding a disciplinary matter earlier that day involving a confrontation between Ms. Staggs and her colleagues. *See* [#41-1 at 80:5-23, 80:24-81:20, 82:5-83:5, 84:10-24; #41-8]; and

    c. January 22, 2018, Ms. Staggs received a short telephone call from Ms. Nielson regarding a disciplinary document emailed from Mr. Archer placing Ms. Staggs on administrative leave, to which Ms. Staggs responded to Mr. Archer via email that she was on FMLA leave and provided a physician's note. [#41-1 at 93:19-94:2, 95:23-96:4, 96:12-16, 96:25-97:19, 98:19-99:14].

    9. On or about February 1, 2018, Senior Human Resources Business Partner Jeff Monzingo issued a memorandum regarding his investigation of an incident involving Ms. Staggs on January 22, 2018, finding over 30 incidents reported to Ms. Nielson regarding Ms. Staggs's inappropriate behavior and concluding that Ms. Staggs's behavior contributed to a decrease in her

productivity and constituted violations of the City's Personnel Rules and Regulations.  *See* [#41-12 at ¶¶ 1-3; #41-13 at 2-5; #41-14 at 5-13].

10. On February 5, 2018, Ms. Nielson submitted a memorandum to Mr. Archer, recommending Ms. Staggs's termination for violations of the City's Personnel Rules and Regulations given Ms. Staggs's disciplinary infractions, including a written reprimand, a one-day suspension, and placement on paid administrative leave.  *See* [#41-3 at ¶¶ 1-4; #41-4].

11. On or about February 9, 2018, Mr. Archer terminated Ms. Staggs, citing a continued pattern of hostility towards Ms. Staggs's colleagues and supervisors and violations of the City's Personnel Rules and Regulations.  *See* [#41-9 at ¶¶ 4-5; #41-11].

## ANALYSIS

### I.   The FMLA, 29 U.S.C. § 2612(a)(1)(D)

Pursuant to the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  Subject to certain exemptions, an employee is entitled to restoration at her original position or an equivalent upon returning from leave and shall not lose any benefits accrued prior to her leave.  *Id.* § 2614(a)(1)-(2).  The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") "has recognized two theories of recovery under § 2615(a): an entitlement or interference theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from § 2615(a)(2)."  *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (footnote omitted).

#### A.   FMLA Interference

To establish a FMLA interference claim, Ms. Staggs must demonstrate:

7

> 1. she was entitled to FMLA leave;
>
> 2. the City took an adverse action that interfered with Plaintiff's right to take leave; and
>
> 3. the City's conduct was related to the exercise of Plaintiff's FMLA rights.

*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). That is, Ms. Staggs must demonstrate the City "prevented [her] from taking the full 12 weeks of leave guaranteed by the FMLA." *Dalpiaz v. Carbon Cty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014) (brackets and internal quotations omitted). Indeed, "[a]ny deprivation of these rights is a violation regardless of the employer's intent[.]" *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 978 (10th Cir. 2017). For this reason, the Tenth Circuit has held that the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applicable to most federal law employment discrimination claims, <u>does not</u> apply to FMLA interference claims. *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226-27 (10th Cir. 2012). But an employer does not interfere with an employee's FMLA rights anytime it terminates an employee who has requested or is on FMLA leave so long as dismissal would have occurred regardless of the FMLA leave. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1007 (10th Cir. 2011) (explaining that an employee on FMLA leave retains no greater rights than those employees still working and is not wholly shielded from termination).

The City argues that Ms. Staggs cannot establish a FMLA interference claim because there is no evidence the City took any adverse action to interfere with Ms. Staggs's FMLA leave. [#41 at 11; #56 at 5-6]. Rather, the undisputed material facts reveal that the City contacted Ms. Staggs only three times during her intermittent FMLA leave, with each contact being trivial and not a demand for work. *See* [#41 at 11-13; #56 at 5-6]. Further, the City contends that it is undisputed that Ms. Staggs's FMLA leave played no role in the City's termination decision. *See* [#41 at 13-16; #56 at 5-6]. I respectfully agree.

The undisputed material facts reveal that Ms. Staggs received three communications from the City while taking FMLA leave. *See* Undisputed Material Facts *supra* at ¶¶ 7-8. Each of these communications appeared trivial in nature and concerned largely disciplinary information unrelated to the FMLA leave. *Id.* Even in reviewing the evidence in light most favorable to Ms. Staggs, these communications are not "impermissible demand[s] for work during FMLA leave." *Sabourin v. Univ. of Utah*, 676 F.3d 950, 961 (10th Cir. 2012) (concluding that the employer's requests for information while the plaintiff was on FMLA leave did not interfere with that leave because the requests were modest and an "unburdensome effort to enable Mr. Sabourin's work to be performed while he was on leave."). Moreover, Ms. Staggs admitted in her deposition that none of her supervisors ever denied her the opportunity to take FMLA leave, *see, e.g.*, [#41-1 at 100:15-21], and she could not recall ever being asked to perform work tasks while on FMLA leave, *see* [*id.* at 108:23-109:3]. Nor did Ms. Staggs adduce any evidence in her Response upon which a factfinder could rely to conclude that the communications interfered with her right to take FMLA leave. *See* [#48].

Further, even assuming the City interfered with Ms. Staggs's FMLA leave,[3] the undisputed material facts reveal that the City terminated Ms. Staggs for reasons wholly unrelated to her FMLA leave, and Ms. Staggs points to no other adverse actions to support her claim for FMLA interference. As explained, "an employer is not necessarily liable under the FMLA anytime it fires an employee who has requested or is on FMLA leave." *Twigg*, 659 F.3d at 1006. Indeed, an "employee who requests FMLA leave would have no greater protection against his or her

---

[3] There is some ambiguity in Ms. Staggs's deposition testimony suggesting she took FMLA leave on January 3 and 22, 2018, but Mr. Archer later placed Ms. Staggs on administrative leave, thereby interfering with FMLA leave. *Compare* [#41-1 at 73:14-17, 74:8-14, 75:1-78:3] *with* [#41-2 at 119:22-120:4, 140:2-141:10]. This ambiguity, however, does not affect the court's analysis.

employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *DePaula*, 859 F.3d at 978.  The undisputed material facts establish that Mr. Archer terminated Ms. Staggs given her continued pattern of hostility towards her colleagues and supervisors and violations of the City's Personnel Rules and Regulations, which occurred before submitting her FMLA leave requests. *See* Undisputed Material Facts *supra* at ¶ 11.  Ms. Staggs has again failed to adduce sufficient evidence to permit a factfinder to conclude that FMLA leave played any role in her ultimate termination, *see id.* at ¶¶ 5, 9-10, and Ms. Staggs's conflicting testimony suggesting otherwise is not enough to refute the overwhelming evidence to the contrary, *compare* [#41-2 at 121:19-122:8 (suggesting her FMLA leave played a role in her termination)] *with* [*id.* at 154:2-5 (admitting that no one informed her that her FMLA leave was the reason for her termination)].

Based on the foregoing, there is "no genuine dispute as to any material fact regarding the grounds for termination."  *Brown*, 700 F.3d at 1227 (concluding that the unrefuted evidence demonstrated that the plaintiff's termination was the result of poor evaluations, poor relationships with co-workers, and poor interactions with customers, not his FMLA leave). Thus, summary judgment in favor of the City is warranted on Ms. Staggs's FMLA interference claim.

### B.     FMLA Retaliation

To establish a FMLA retaliation claim, Ms. Staggs must demonstrate:

1. she engaged in activity protected by the FMLA;

2. The City took a materially adverse action; and

3. a causal connection between the protected activity and materially adverse action.

*Metzler*, 464 F.3d at 1171.   Unlike FMLA interference claims, courts employ the *McDonnell Douglas* burden-shifting framework when, as here, the plaintiff does not present direct evidence

of retaliation under the FMLA at summary judgment. *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). Under this framework, Ms. Staggs must first establish the three elements of a prima facie case of retaliation. *See Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318-19 (10th Cir. 2017). The burden then shifts to the City to offer a legitimate, non-retaliatory reason for the employment action. *See Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). If it does so, the burden shifts back to Ms. Staggs to establish (at the least) a genuine issue of material fact that the City' offered non-retaliatory reason is mere pretext. *See Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 947 (10th Cir. 2011).

The City argues, for the sake of the instant Motion, that Ms. Staggs establishes a prima facie case of FMLA retaliation. *See* [#41 at 17]. The court likewise assumes (without deciding) that Ms. Staggs satisfies her initial burden under the *McDonnell Douglas* framework.[4] The court also agrees with the City that it offers a legitimate, non-retaliatory reason for Ms. Staggs's termination. [#41 at 17]. That is, the City terminated Ms. Staggs for her continued behavioral issues, confrontations with colleagues and supervisors, and violations of the City's Personnel Rules and Regulations. *See* Undisputed Material Facts *supra* at ¶¶ 5, 9-11. Because the City has satisfied its burden, *see DePaula*, 859 F.3d at 970 ("The defendant's burden is exceedingly light"), the burden shifts back to Ms. Staggs to demonstrate that the City's legitimate, non-retaliatory reason was merely pretext. This she has not done.

"A plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational

---

[4] Indeed, Ms. Staggs's burden in this regard is not onerous. *See Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005); *see also Argo*, 452 F.3d at 1201 ("For most plaintiffs, establishing a prima facie case is perfunctory, and liability turns on whether the defendant's stated explanation for the adverse employment action is pretextual.").

factfinder could conclude they are unworthy of belief." *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 900 (10th Cir. 2017). Ms. Staggs may do so by establishing that the City's reason was false, was contrary to City policy, or was applied differently to Ms. Staggs than other employees. *See DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017). But mere conjecture or speculation is not enough. *See Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1200 (10th Cir. 2015). Rather, the court must examine the facts as they appeared to the person who decided to terminate the plaintiff, and the court will not second-guess the propriety of that decision if the employer believed its legitimate, non-retaliatory reasons and acted in good faith on those reasons. *See Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017).

The City argues, and the court agrees, that the undisputed material facts do not establish that its legitimate, non-retaliatory reasons for terminating Ms. Staggs were pretextual. *See* [#41 at 18-20].[5] While the undisputed material facts reveal that Ms. Staggs last took FMLA leave on or about January 22-24, 2018 and was terminated about February 9, 2018, temporal proximity itself is insufficient to establish pretext without any suggestion of a retaliatory motive. *Campbell*, 478 F.3d at 1290 (explaining that "to show pretext [the plaintiff] must present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive." (emphasis in original) (ellipsis and internal quotations omitted)). And although Ms. Staggs testified that her supervisors told her to take FMLA leave on January 22, 2018, but that Mr. Archer later that day placed Ms. Staggs on administrative leave, *see* [#41-1 at 87:7-89:5], Ms. Staggs has not put forth any evidence

---

[5] Although Ms. Staggs did not respond to the City's pretext arguments, the court must nonetheless determine whether summary judgement in favor of the City is appropriate. *See Reed v. Benett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (explaining, "a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that judgment for the moving party is 'appropriate' under Rule 56.").

suggesting that Mr. Archer did so in bad faith or in retaliation for Ms. Staggs taking FMLA leave. Indeed, Ms. Staggs testified that she later learned Mr. Archer put her on administrative leave because of the incidents surrounding her confrontations with other employees—the same reasons that led to her eventual termination.  *E.g.*, [#41-1 at 91:2-16; #41-2 at 121:8-13, 123:4-10, 127:13-20, 153:22-154:1].

Further, Ms. Staggs has put forth no evidence suggesting Mr. Archer did not believe the proffered reasons for Ms. Staggs's administrative leave and eventual termination.  *See Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (explaining that to support a finding of pretext "[the plaintiff] must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda."). And Ms. Staggs's steadfast denials of wrongdoing are not enough to create a genuine issue of material fact as to pretext.  *See Metzler*, 464 F.3d at 1179 ("Even assuming [plaintiff] subjectively believed she did not have a poor attitude or that her knowledge and performance were up to par, it is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of her own relative performance."  (brackets and internal quotations omitted)).

Ultimately, any suggestion that the City's legitimate, non-retaliatory reasons for terminating Ms. Staggs are pretextual hinge on speculation or conjecture, but neither is sufficient at summary judgment.  *See Doan v. Seagate Tech., Inc.*, 82 F.3d 974, 977 (10th Cir. 1996) ("Speculation, however, will not suffice for evidence [of pretext]."). Instead, the undisputed material facts reveal that the City terminated Ms. Staggs for her repeated disciplinary infractions, not because of her FMLA leave.  *See Campbell*, 478 F.3d at 1291 (finding no evidence of pretext because the plaintiff failed to rebut the defendant's evidence that it terminated the plaintiff for her

poor performance, among other non-retaliatory reasons, not her FMLA leave). Thus, summary judgment is appropriate in favor of the City on Ms. Staggs's FMLA retaliation claim.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)   The City of Arvada's Motion for Summary Judgment [#41] is **GRANTED**;

(2)   Summary Judgment shall enter in favor of the City of Arvada and against Ms. Staggs, and Ms. Staggs's Amended Complaint [#20] and remaining FMLA claims are **DISMISSED with prejudice**;

(3)   Final Judgment shall enter in favor of the City of Arvada and against Ms. Staggs, with each bear to bear her or its owns fees and costs;[6]

(4)   The five-day jury trial set to begin on **June 14, 2021**, and all associated deadlines set by the Trial Preparation Order [#59], are **VACATED**; and

(5)   The Clerk of the Court shall terminate this civil action as well as the companion action Civil Action No. 19-cv-03117-NYW pursuant to the entry of Final Judgment.

DATED:  February 3, 2021                                      BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge

---

[6] While costs should generally "be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1), the district court may in its discretion decline to award costs where a "valid reason" exists for the decision. *See, e.g., In re Williams Securities Litigation-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009) (citations omitted). Because the issues presented in this matter were close, and because Plaintiff is pro se, the court declines to award costs. *See Cantrell v. Int'l Bhd. of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456, 459 (10th Cir. 1995) (noting that there is no abuse of discretion when the district court denies fees "to a party that was only partially successful."); *Shapiro v. Rynek*, 250 F. Supp. 3d 775, 779 (D. Colo. 2017) ("[A] district court does not abuse its discretion in denying costs when . . . the non-prevailing party is indigent.").